IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EDWARD ROBERSON, #R60232, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-cv-01362-DWD |
| | ) |
| ANTHONY WILLS, | ) |
| C/O ROWLAND, | ) |
| JOHN/JANE DOE, | ) |
| ETHAN KEMPFER, | ) |
| ROBERT RHOADES,[1] | ) |
| C/O WOMBLE, | ) |
| C/O ADAMS, | ) |
| CODY SWOULS, | ) |
| SHANE SUSLER, | ) |
| HEATHER HOOD, | ) |
| KELLY PRIECE, | ) |
| and C/O DRAKE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Edward Roberson is an inmate in the custody of the Illinois Department of Corrections ("IDOC") and is currently incarcerated at Menard Correctional Center ("Menard"). He brings this action under 42 U.S.C. § 1983 and the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-2680, for alleged violations of his constitutional rights at Menard. In his Complaint filed October 29, 2021, Roberson alleges that Menard officials have undertaken a campaign of retaliation against him for filing grievances and lawsuits about

---

[1] Although this defendant is referred to as "Rhoades" in the list of defendants, Roberson refers to him as "Rhodes" in the list of claims. (Doc. 1, pp. 15-20). The Court will use "Rhodes" to identify this individual throughout the Screening Order.

1

the conditions of his confinement. (Doc. 1, pp. 1-23). He offers a disturbing glimpse into these conditions, describing contaminated and rotten food and otherwise deplorable living conditions. Roberson seeks declaratory judgment, money damages, and injunctive relief. (*Id.* at 21).

On November 24, 2021, Roberson also filed a motion for temporary restraining ("TRO") order and/or preliminary injunction. (Doc. 7). In the motion, he requests an order prohibiting certain defendants from engaging in acts of retaliation against him during the pending action. (*Id.*). Given this request for relief, the Court will take up this matter without delay. *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680 (7th Cir. 2012).

The Complaint is subject to review under 28 U.S.C. § 1915A. Section 1915A requires the Court to screen prisoner complaints and filter out non-meritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b). At this stage, the factual allegations are liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

In the Complaint, Plaintiff alleges that the defendants retaliated against him for bringing grievances and lawsuits about the conditions of his confinement. (Doc. 1, pp. 10-15). The retaliation began after he filed an amended complaint in an "earlier civil action."[2]

---

[2] Although the Court notes that Roberson has filed several lawsuits in this federal judicial district and others, he does not identify which earlier civil action triggered the retaliation at issue.

(*Id*. at 10). Soon after doing so in 2019, the prison's kitchen staff and correctional officers began providing Roberson with inadequate and contaminated meals. (*Id*.).

Roberson is Jewish and adheres to a kosher diet as part of his religious practice. He requested a kosher food tray in August 2019. Chaplain James Claycomb approved his request on August 30, 2019, and Warden Frank Lawrence issued his approval on September 3, 2019. Roberson was scheduled to begin receiving a kosher meal tray on October 1, 2019. (*Id*.).

Despite the order, the kitchen "diet tray" supervisor, John Doe, refused to provide Roberson with religious meal trays from October 1-15, 2019. Roberson filed one or more grievances to address the issue, to no avail. At some point during this time period, he also resorted to "peaceful protest" by withholding three hard trays from staff during breakfast, lunch, and dinner in a single day. (*Id*.). He was punished with a disciplinary ticket and issued "control[l]ed eating mealoafs" for several days thereafter. (*Id*.).

On October 16, 2019, Lieutenant Perner instructed staff to provide Roberson with his religious diet, as originally ordered. Almost immediately, the kitchen staff and inmate trustees began tampering with his food. (*Id*. at 10-11). For months, he was given breakfast trays consisting of cold cereal containing a "threatening substance" and two apple slices containing puncture wounds. Roberson blames the third shift officers (11 p.m. to 7 a.m. shift) for planting "poison, chemicals, insect/bugs" and even "spit" in the small portions of food he received at breakfast. (*Id*. at 11).

For lunch on Mondays, Wednesdays, and Fridays, he was given small portions of tuna containing a mixture of "disinfectant, medication, poisonous substance, and the

3

taste of chewing tobacco." (*Id*.). On Tuesdays and Thursdays, he received prepackaged TV dinner trays consisting a five different meals that were on the "verge of going bad" on countless occasions. (*Id*. at 11-12). After consuming these meals, Roberson "instantly" suffered from an increased heart rate, labored breathing, leg weakness, lightheadedness, and dizziness. (*Id*. at 12). These symptoms lasted for several minutes. (*Id*.).

For dinner each day, Roberson received prepackaged meal trays with broken seals and a strong odor. These meals often caused him to suffer from symptoms of food poisoning, resulting in instant pain throughout his body. Consumption of this food left him bedridden for days, with stomach pain, indigestion, diarrhea, and dehydration. He requested medical assistance from officers, who told him to file a request for treatment with Menard's health care unit (HCU). Roberson handed these written requests to officers and nurses, but no medical assistance was provided. (*Id*.).

Things only got worse when Roberson filed an amended complaint in another lawsuit[3] on or around May 28, 2020. (*Id*. at 13). Staff soon waged an "all out war" against him. They forced his entire gallery to eat breakfast later than usual. They provided Roberson with small portions and tampered with his food. Beginning June 28, 2020, staff denied him out-of-cell exercise and recreation for an undisclosed period of time. (*Id*.).

This was eleven months after he transferred to punitive segregation in North-2 housing unit, where he was placed in a dilapidated and dusty cell containing a steel door and measuring only 102" by 42." His bed frame, alone, measured 90" in length. (*Id*.). He

---

[3] He does not identify this lawsuit with particularity.

4

endured extreme temperatures in the winter, without blankets, and in the summer, without fans. (*Id*. at 13). Poor ventilation aggravated his asthma and made it nearly impossible to breathe. (*Id*. at 14). Roberson was also denied showers for the entire month of December 2020. His numerous requests for mental health counseling and treatment were denied. Roberson wrote the warden, counselor, and internal affairs to complain about these conditions, and he also saved evidence. Soon after doing so, however, staff searched his cell and confiscated the evidence. (*Id*.).

## Discussion

Against this backdrop, Roberson brings twenty-one (21) separate claims against the twelve (12) defendants,[4] as follows:

### Count 1 – First Amendment Claims

**Count 1A:**  Wills, Rowland, Susler, Drake, and Priece retaliated against Roberson for filing grievances and lawsuits by continuously allowing other officers to retaliate against him.

**Count 1B:**  Hood and Priece failed to process Roberson's grievances and denied him access to remedies at the institutional level.

**Count 1C:**  Nonparties retaliated against Roberson for filing grievances and lawsuits by refusing him HCU services and mental health counseling from August 10, 2020 to the present.

**Count 1D:**  Kitchen supervisor John/Jane Doe, Swouls, Rhodes, Kempfer, Adams, and Womble retaliated against Roberson for filing grievances and lawsuits against staff by serving him inadequate food trays, denying him out-of-cell exercise, and refusing him showers.

---

[4] The Court has omitted the names of non-parties from the list of claims for reasons explained in the below section, entitled "Preliminary Dismissals" of non-parties.

**Count 1E:** Kitchen Supervisor John/Jane Doe retaliated against Roberson for filing grievances and lawsuits by refusing to serve him the approved religious meal tray from October 1-16, 2019.

### Count 2 – Eighth Amendment Claims

**Count 2A:** Wills, Rowland, Susler, and Drake received numerous letters and grievances from Roberson about his inadequate meals, conditions of confinement, refusal of medical assistance, and denial of mental health counseling, but ignored his complaints.

**Count 2B:** Hood exhibited deliberate indifference to Roberson's medical needs and mental health status from August 10, 2020 to the present.

**Count 2C:** Kitchen Supervisor John/Jane Doe and Drake allowed inmate trustees to tamper with and remove food items from Roberson's meal trays off camera, resulting in inadequate food portions.

**Count 2D:** Drake, Rhodes, Kempfer, Adams, Womble, and Swouls exhibited deliberate indifference to the denial of Roberson's kosher meal trays and contamination of his food from October 16, 2019 to the present.

**Count 2E:** Drake, Kempfer, Rhodes, Womble, and Adams, allowed other inmates to contaminate and steal Roberson's food from his breakfast tray from August 28, 2020 to the present.

**Count 2F:** Kempfer, Rhodes, Adams, and Womble failed to stop fellow officers from tampering with Roberson's food tray and serving him inadequate meals.

**Count 2G:** A nonparty failed to treat Roberson for his "illnesses" and caused him to develop hypertension, muscle atrophy, and stomach pain.

**Count 2H:** Nonparties refused to assist Roberson with mental health counseling and caused him to develop anxiety, paranoia, and depression.

**Count 2I:** Wills, Rowland, Susler, and Hood housed Roberson in a poorly ventilated and dilapidated cell in extreme temperatures with no out-of-cell exercise from June 28, 2020 to the present.

6

### Count 3 – Fourteenth Amendment Due Process Claims

**Count 3A:** Wills, Rowland, Susler, and Hood violated Roberson's Fourteenth Amendment rights by discriminating against him for being the only African-American inmate in segregation who practiced Judaism by adhering to a kosher diet.

**Count 3B:** Drake, Kempfer, Rhodes, Adams, Womble, and Swouls violated Roberson's Fourteenth Amendment rights by continuously serving him inadequate trays and allowing someone to spit into his food.

**Count 3C:** Wills, Rowland, Drake, Kempfer, and Rhodes violated Roberson's Fourteenth Amendment rights by allowing Kempfer to harass him and sabotage his breakfast trays after Roberson filed multiple grievances to address the issue.

**Count 3D:** Nonparties denied Roberson healthcare and mental health assistance for more than a year while he was in segregation.

**Count 3E:** Nonparties denied Roberson three "showers and shaves" per week for more than a year.

**Count 3F:** Wills, Rowland, Susler, and Drake housed Roberson in a cell behind a steel door with poor ventilation, decaying walls, a termite infestation, poor plumbing, and extreme temperatures without blankets or fans.

**Count 3G:** Priece and Hood refused to process grievances filed by Roberson.

*See id*. at 15-20. Any claim that is mentioned in the Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### Preliminary Dismissals

**A.    Claims Against Non-Parties**

In the Complaint, Roberson refers to several individuals who are not named as defendants in this action, and he attempts to bring claims against most of them. When

parties are not named in the Complaint's caption or in the list of defendants, this Court will not treat them as defendants. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (to be properly considered a party, a defendant must be "specif[ied] in the caption"). These individuals include, but are not limited to, the following: James Claycomb, Frank Lawrence, Lieutenant Perner, Phillip Royster, Sara Quick, Zachary Fenton, Lapofsky, Edwards, Smith, Tatum, Metcalf, McCallian, Connor, Mitchell, Wheat, Hunter, Momado, Bent, Doctor John/Jane Doe, Mental Health Counselor John/Jane Doe, and inmate trustees. All claims against these non-parties are considered dismissed without prejudice from this action.

## Section 1915A Merit Review

Roberson brings this action pursuant to 42 U.S.C. § 1983 and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-2680. The crux of the Complaint is that Roberson has been subjected to inadequate nourishment and inhumane living conditions at Menard. He shall be allowed to proceed with Section 1983 claims addressing both issues.

**A.    Section 1983**

Section 1983 provides an avenue to relief against state actors. To bring a Section 1983 claim, a plaintiff must set forth allegations describing a violation of his federally protected rights by a defendant who acted under color of state law. *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993). However, a Section 1983 defendant cannot be held liable for a subordinate's unconstitutional conduct because the theory of

8

*respondeat superior* liability is not recognized in this context. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Liability instead hinges on personal involvement in or responsibility for a deprivation of the plaintiff's constitutional rights. *Knight v. Wiseman*, 590 F.3d 458, 462-63 (7th Cir. 2009). Liberally construed, Roberson's allegations articulate claims of constitutional violations against a two defendants: Kitchen Supervisor John/Jane Doe and Warden Wills.

### 1. Kitchen Supervisor John/Jane Doe

Roberson alleges that the kitchen "diet tray" supervisor, John Doe, refused to provide him with religious meal trays from October 1-15, 2019 and denied him nutritionally adequate meals thereafter. (*See* Doc. 1, p. 10). Although Roberson fails to name the "Kitchen Diet Tray Supervisor" as a defendant in the list of parties, he does name "Kitchen Supervisor John/Jane Doe" in connection with the following three claims:

> **Count 1D:** Kitchen Supervisor John/Jane Doe retaliated against Roberson for filing grievances/lawsuits against staff by serving him inadequate food trays,[5] in violation of the First Amendment.
>
> **Count 1E:** Kitchen Supervisor John/Jane Doe retaliated against Roberson for filing grievances/lawsuits by refusing to serve him a religious meal tray from October 1-16, 2019, in violation of the First Amendment.
>
> **Count 2C:** Kitchen Supervisor John/Jane Doe allowed inmate trustees to tamper with and remove food items from Roberson's meal trays off camera, resulting in inadequate food portions, in violation of the Eighth Amendment.

When taken together, the background allegations and list of claims articulate a First

---

[5] Roberson also refers to the denial of exercise and showers, but kitchen supervisors are generally not involved in decisions regarding exercise or showers. This portion of the claim shall be dismissed without prejudice.

9

Amendment retaliation claim in Count 1D, a First Amendment retaliation *and* free exercise claim in Count 1E, and an Eighth Amendment deliberate indifference to conditions-of-confinement claim in Count 2C against Kitchen Supervisor John/Jane Doe. *See Walker v. Thomas*, 288 F.3d 1005, 1012 (7th Cir. 2002) (articulating standard for First Amendment retaliation claim); *Thompson v. Holm*, 809 F.3d 376 (7th Cir. 2016) (articulating standard for First Amendment free exercise claim); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (articulating Eighth Amendment standard for conditions-of-confinement claim). Counts 1D, 1E, and 2C shall proceed against this individual defendant.

### 2. Warden Wills

Construed very liberally, the Complaint also articulates four claims against the "warden," who Roberson allegedly wrote to complain about the many unconstitutional conditions of his confinement. (*See* Doc. 1, p. 14). The only "warden" named as a defendant is Warden Wills (*id.* at 1), and he is identified in connection with the below claims:

**Count 2A:** Wills received numerous letters and grievances from Roberson about his inadequate meals, conditions of confinement, refusal of medical assistance, and denial of mental health counseling, but ignored his complaints, in violation of Roberson's rights under the Eighth Amendment.

**Count 2I:** Wills housed Roberson in a poorly ventilated and dilapidated cell in extreme temperatures with no out-of-cell exercise from June 28, 2020 to the present, in violation of his rights under the Eighth Amendment.

**Count 3C:** Wills violated Roberson's First, Eighth, and/or Fourteenth Amendment rights by allowing officers to sabotage his breakfast trays after Roberson filed multiple grievances to address the issue.

>**Count 3F:** Wills deprived Roberson of a protected liberty interest without due process of law by housing him in punitive segregation long term in a cell with a steel door, poor ventilation, decaying walls, a termite infestation, poor plumbing, and extreme temperatures without blankets or fans, in violation of his rights under the Fourteenth Amendment.

The Court finds that the above-referenced claims against this individual survive screening. Accordingly, Counts 2A, 2I, 3C, and 3F[6] shall receive further review against Warden Wills in his individual capacity.

### 3. All Other Defendants

All other claims and defendants shall be dismissed without prejudice. Roberson sets forth five pages of deeply disturbing allegations regarding the conditions of his confinement without otherwise mentioning the individual defendants. He instead refers to nonparties (*e.g.*, Chaplain Claycomb and Warden Lawrence) and other generic groups (*e.g.*, correctional officers, prison staff, third shift officers, internal affairs, *etc.*). In conclusory fashion, Roberson then itemizes twenty-one separate claims against the twelve defendants and seventeen-plus non-parties.

The problem is that Roberson fails to describe what each defendant did, or failed to do, in violation of his constitutional rights. He does not draw the necessary connection between the misconduct alleged and the named defendants. Under the circumstances presented, the allegations suggest possible, but not plausible, claims against them. Roberson has not satisfied the pleading standards set forth in *Twombly*. *See Twombly*, 550

---

[6] The discrimination claim in Count 3A mentions Warden Wills, but it is factually undeveloped.

11

U.S. at 570 (plaintiff must plead "enough facts to state a claim to relief that is plausible on its face"). Therefore, all other Section 1983 claims against the defendants shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.[7]

B.     **Federal Tort Claims Act**

The FTCA provides the plaintiff with no avenue to relief. This statute authorizes "civil actions on claims against the United States, for money damages . . . for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). It provides jurisdiction for suits against the United States for torts committed by federal actors. Roberson does not name the United States as a defendant or complain of misconduct by federal officials. His claims arise from allegations of misconduct by state actors. The FTCA claims shall therefore be dismissed with prejudice against all defendants.

## Identification of Unknown Defendant

Counts 1D, 1E, and 2C survive screening against Kitchen Supervisor John/Jane Doe. This defendant must be identified with particularity before service of the Complaint can be made on him or her. Roberson will have the opportunity to engage in limited

---

[7] To the extent his claims involve different defendants and are unrelated to Counts 1D, 1E, and 2C against Kitchen Supervisor John/Jane Doe or Counts 2A, 2I, 3C, and 3F against Warden Wills, Roberson should bring the claims in a separate suit, if he decides to pursue them at all. If he reasserts claims that are improperly joined herein, the Court reserves the right to sever them as it deems appropriate. *See* FED. R. CIV. P. 18, 20-21.

discovery to ascertain the identity of this individual. *Rodriguez*, 577 F.3d at 832. Warden Wills is already named in his individual capacity and shall also be named in his official capacity for purposes of responding to discovery aimed at identifying the unknown defendant. Once the name of Kitchen Supervisor John/Jane Doe is discovered, Roberson must file a motion to substitute the newly-identified defendant in place of the generic designations in the caption and Complaint.

## Pending Motions

**A.     Motion for Leave to Proceed *in forma pauperis* (Doc. 2)**

Roberson filed a motion for leave to proceed *in forma pauperis* ("IFP") that remains pending because he has not provided the Court with the prisoner trust fund account information necessary to determine his eligibility to proceed IFP without prepaying filing fees and costs. The deadline for submitting this information to the Court is December 16, 2021. (Doc. 6). Roberson is reminded of this obligation and again **WARNED** that failure to provide it will result in denial of the IFP motion and dismissal of the action.

**B.     Motion for TRO and/or Preliminary Injunction (Doc. 7)**

Roberson also filed a motion for TRO and/or preliminary injunction, in which he seeks an order prohibiting *certain* defendants from doing the following:

> . . . retaliat[ing], serving, nor handling meals, serving inadequate meals, housing in inadequate conditions of confinement, refus[ing] out of cell exercise, refusing mental health counseling, refusing medical assistance, and closing food port [door and thereby] preventing decent air quality and circulation.

(Doc. 7).  In the 118-page motion, Roberson reasserts many of the same allegations contained in the Complaint. He also complains of mail interference, improper body cavity

searches, sexual harassment, excessive force, and confiscation of personal property. (*See, id.* at 9-12). Although he complains of misconduct occurring from July 29, 2019 through October 29, 2021, Roberson states that certain misconduct is ongoing. (*Id.*).

A TRO is an order issued without notice to the party to be enjoined that may last no more than fourteen days. *See* FED. R. CIV. P. 65(b)(2). A TRO may issue without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). Such injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

In contrast, a preliminary injunction is issued only after the adverse party is given notice and an opportunity to oppose the motion. *See* FED. R. CIV. P. 65(a)(1). A plaintiff seeking a preliminary injunction must demonstrate the following: (1) he will suffer irreparable harm if he does not obtain the requested relief; (2) traditional legal remedies are inadequate; and (3) he has some likelihood of prevailing on the merits of his claim. *See Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (citing *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020)). If a plaintiff makes this showing, the Court then balances the harm to the plaintiff caused by denying the preliminary injunction with the harm to Defendants caused by granting relief. *Mays v. Dart*, 974 F.3d at 818.

The Court finds insufficient grounds for granting either form of relief at this time. First, Roberson complains of events that occurred between July 26, 2019 and October 29, 2021. Although he alludes to ongoing misconduct, Roberson does not actually describe it

14

or suggest that he will face harm if his request for relief is denied. He must offer the Court some indication of what issues warrant this drastic form of relief. If these issues are not ongoing, there is no need to address them through a TRO or preliminary injunction.

Second, Roberson's case now focuses on inadequate nourishment and unconstitutional living conditions. To the extent he seeks injunctive relief pertaining to other matters, his request exceeds the scope of this lawsuit. An injunction is appropriate only if it seeks relief of the same character sought in the underlying suit. *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *Neuroscience, Inc. v. Forrest*, No. 12-cv-813-bbc, 2013 WL 6331348, at *1 (W.D. Wis. Dec. 5, 2013) (denying motion for preliminary injunction because it raised issues outside scope of complaint). *Oswald v. Dep't of Corr.*, 17-CV-1437-PP, 2018 WL 4623583, at *2 (E.D. Wis. Sept. 26, 2018). This does not preclude Roberson from filing a motion for TRO or preliminary injunction in another pending action that focuses on an issue.

Turning to the claims that remain in this case, Roberson does not seek injunctive relief for acts of misconduct by the two remaining defendants. It is possible that the Court missed relevant allegations that are contained somewhere in the 118-page motion. If so, Roberson is free to file a new motion for temporary restraining order and/or preliminary injunction pursuant to Rule 65(a) or (b) of the Federal Rules of Civil Procedure. There, he should set forth the exact relief he requires and the facts that support his request for relief. The motion need not be long or detailed. He may renew his request for this relief at any time during the pending action.

Because he has failed to satisfy the above-listed requirements for interim relief, the pending motion for TRO or preliminary injunction (Doc. 7) is **DENIED without prejudice**.

### Disposition

**IT IS ORDERED** that the Complaint (Doc. 1) survives screening pursuant to 28 U.S.C. § 1915A, as follows:

The below claims will proceed against **KITCHEN SUPERVISOR JOHN/JANE DOE**, in his/her individual capacity:

**Count 1D:** Kitchen Supervisor John/Jane Doe retaliated against Roberson for filing grievances/lawsuits against staff by serving him inadequate food trays, in violation of the First Amendment.

**Count 1E:** Kitchen Supervisor John/Jane Doe retaliated against Roberson for filing grievances/lawsuits by refusing to serve him a religious meal tray from October 1-16, 2019, in violation of the First Amendment.

**Count 2C:** Kitchen Supervisor John/Jane Doe allowed inmate trustees to tamper with and remove food items from Roberson's meal trays off camera, resulting in inadequate food portions, in violation of the Eighth Amendment.

The below claims will proceed against **WARDEN WILLS**, in his individual capacity:

**Count 2A:** Wills received numerous letters and grievances from Roberson about his inadequate meals, conditions of confinement, refusal of medical assistance, and denial of mental health counseling, but ignored his complaints, in violation of Roberson's rights under the Eighth Amendment.

**Count 2I:** Wills housed Roberson in a poorly ventilated and dilapidated cell in extreme temperatures with no out-of-cell exercise from June 28, 2020

        to the present, in violation of his rights under the Eighth Amendment.

**Count 3C:**  Wills violated Roberson's Eighth and/or Fourteenth Amendment rights by allowing officers to sabotage his breakfast trays after Roberson filed multiple grievances to address the issue.

**Count 3F:**  Wills violated a protected liberty interest without due process of law by housing Roberson in punitive segregation long-term in a cell with a steel door, poor ventilation, decaying walls, a termite infestation, poor plumbing, and extreme temperatures without blankets or fans, in violation of his rights under the Fourteenth Amendment.

**IT IS ORDERED** that the Federal Tort Claims Act claims against **ALL DEFENDANTS** are **DISMISSED** with prejudice, and **ALL OTHER CLAIMS** and **DEFENDANTS** are **DISMISSED** without prejudice for failure to state a claim.

In addition to the claims proceeding against him in his individual capacity, **WARDEN ANTHONY WILLS** shall be **ADDED** as an **OFFICIAL CAPACITY** defendant and act in his official capacity to identify the unknown kitchen supervisor and implement any injunctive relief ordered in this action.

The Clerk of Court shall prepare for Defendants **WARDEN ANTHONY WILLS** (individual and official capacity)**,** and, once identified, **KITCHEN SUPERVISOR JOHN/JANE DOE** (individual capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take

appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with that defendant's current work address, or his or her last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in

dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 3, 2021**

_____
DAVID W. DUGAN
United States District Judge

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial

screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, they will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.