IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **EDWARD ROBERSON, R60232,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | ) |
| **ANTHONY WILLS,** | ) |
| **ETHAN KEMPFER,** | )  Case No. 21-cv-1362-DWD |
| **ROBERT RHOADES,** | ) |
| **CODY SOWELS,** | ) |
| **BRYCE McCLELLAN,** | ) |
| **ZACHARY CONNOR,** | ) |
| **JAMES DOWDY,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

This matter is before the Court on Defendants' ("Defendants") affirmative defense that Plaintiff Edward Roberson failed to exhaust his administrative remedies prior to filing this lawsuit as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). The Court held a *Pavey* hearing on December 6, 2023, to make findings about exhaustion in this case. *See Pavey v. Conley*, 663 F.3d 899, 904 (7th Cir. 2011); *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). After hearing from the parties and reviewing the evidence on exhaustion, the Court finds that the Plaintiff failed to exhaust his administrative remedies against Defendants Sowels and McClellan, and he failed to exhaust his administrative remedies against Defendant Wills concerning his conditions of confinement.

## BACKGROUND

Plaintiff signed his complaint on October 25, 2021. (Doc. 1 at 21) Upon initial review, the Court allowed seven claims to proceed. (Doc. 8 at 16-17). Plaintiff moved for leave to amend his complaint in April of 2022, and the Court granted the motion and added parties to existing claims. (Doc. 25 at 3-4). The parties then conducted discovery on the exhaustion of administrative remedies, and the Defendants filed a motion for summary judgment on this issue. (Docs. 61, 62). Plaintiff responded (Doc. 64), and the Court resolved some of the exhaustion issues in a written order (Doc. 68). After the written ruling on the exhaustion of administrative remedies, the following claims remained at the time of the *Pavey* hearing:

Claim 1D: Dowdy, Kempfer, Rhoades, Sowels, Connor, and McClellan retaliated against Roberson for filing grievances/lawsuits against staff by serving him inadequate food trays, in violation of the First Amendment.

Claim 2C: Dowdy, Kempfer, Rhoades, Sowels, Connor, and McClellan allowed inmate trustees to tamper with and remove food items from Plaintiff's meal trays off camera, resulting in inadequate food portions, in violation of the Eighth Amendment;

Claim 2A: Wills received numerous letters and grievances from Plaintiff about his inadequate meals and conditions of confinement, but ignored his complaints in violation of Plaintiff's rights under the Eighth Amendment;

Claim 2I: Wills housed Plaintiff in a poorly ventilated and dilapidated cell in extreme temperatures with no out-of-cell exercise from June 28, 2020, to the present, in violation of his rights under the Eighth Amendment;

Claim 3C: Wills violated Plaintiff's Eighth and/or Fourteenth Amendment rights by allowing officers to sabotage his breakfast trays after Plaintiff filed multiple grievances about the issue;

(Doc. 68).

For purposes of the *Pavey* hearing, the Court determined that it needed additional evidence only concerning the involvement of Defendants Sowels and McClellan with the alleged retaliation or interference with food tray claims (Claims 1D and 2C); and concerning Defendant Wills solely as to the conditions of confinement (Claims 2A and 2I). Aside from these narrow issues, the Court concluded in the written ruling on the exhaustion of administrative remedies that all other claims were adequately exhausted. The Court was explicit that these would be the only issues considered at an evidentiary hearing, and when it granted Defendants' Motion for a hearing, the Court reiterated that the hearing would be limited to these three defendants and four claims. (Doc. 68 at 14; Doc. 70 at 1). The parties were directed to file witness and exhibit lists prior to the hearing, and to tender statements of undisputed facts. (Doc. 70). The Defendants filed timely materials (Docs. 74-76), and the Plaintiff did not submit anything.

Plaintiff's lawsuit generally concerns the conditions of his confinement from late-June of 2020 up to the filing of the lawsuit, and his access to adequate meal trays. In broad terms, Plaintiff alleges that he was housed in a segregation cell that was dilapidated and had inadequate climate control, and he alleges guards frequently tampered with his food by providing trays that contained live or dead insects and other contaminants. He also alleges retaliation associated with these issues.

As the Court found upon review of the Motion for Summary Judgment on Exhaustion there was a dispute of fact about if Plaintiff attempted to file a grievance

concerning his access to food trays or retaliation and Defendants Sowels and McClellan. The Defendants summary judgment briefs and evidence asserted that no such grievance existed, but in his response to summary judgment, Plaintiff insisted he had filed a grievance on June 14, 2021, with the ARB about Sowels and McClellan after many unsuccessful attempts to tender the grievance at the prison level.  (Doc. 68 at 8).  The same was true of grievances concerning Plaintiff's conditions of confinement that might've been directed to Defendant Wills.  Defendants contended there were no properly filed and exhausted grievances, but Plaintiff countered that he made many attempts to grieve this issue at the prison before sending a grievance on this topic to the ARB in March of 2021.  (Doc. 68 at 9-11).

## FINDINGS OF FACT

At the evidentiary hearing, the Defendants presented Kelly Pierce, a grievance officer at Menard Correctional Center.  Ms. Pierce testified that she has been employed as a grievance officer at Menard for the last eight years.  In her role as a grievance officer she regularly receives, processes, and reviews grievances from inmates, including Plaintiff.  The process for submitting and exhausting grievances is set forth in an institutional bulletin, in the law library, in the offender orientation manual, and briefly on the grievance forms themselves.  The process has been the same at Menard during the whole time relevant to this lawsuit.  At each step of the process, grievances are logged and tracked by the facility in an internal grievance log.  Two logs of this nature were described and admitted into evidence at the hearing as Exhibits 3 and 4.  The logs reflect the handling of some of Plaintiff's grievances in 2019 and 2020.

Ms. Pierce testified that an individual in restricted housing (such as Plaintiff) may either place grievances in a locked box on the cellhouse wall, or if he cannot leave his cell, he may place grievances in a locked box that is wheeled around by officers. The boxes on the walls and wheeled around the cellhouse are locked and can only be opened by officials with the key (such as the grievance officers). Ms. Pierce testified that although she did not know the exact measurements, the slot on the boxes to receive grievances is small. The grievances are then received in the grievance office, they are assigned a number, they are logged, and the inmate receives a receipt. Per the Menard practice, a receipt should be generated within 48 hours. She testified that because internal mail can be a bit slow, she would recommend that an inmate follow-up on the status of a grievance if he does not receive a receipt within five days of submitting a grievance.

To verify if a grievance has been filed, an inmate can either ask a counselor during cellhouse rounds, or he can send a kite to the grievance office. Counselors do rounds in segregation every 30 days, and they record inquiries from rounds in the cumulative counseling log. If an inmate asks to confirm that he has filed a grievance either via the counselor or a kite, the grievance office will always respond to those inquiries. The only time that a kite or inquiry may go unanswered is if it is a duplicate. For example, if an inmate writes to ask how long it will take to process his grievance, the grievance office may only respond the first time to that inquiry, but they will not answer the same inquiry repeatedly if an inmate sends it every single day.

Ms. Pierce reviewed the June 14, 2021, grievance that Plaintiff submitted directly to the ARB. (Exhibit 1 at pages 2-4). She testified that although she did not receive the

grievance at Menard, she could tell by the markings on the grievance, and by the ARB's response that the grievance was submitted out-of-procedure. Specifically, the grievance was transmitted directly to the ARB, where it was rejected because it did not reflect any responses from the prison level. Ms. Pierce did not know if after the ARB returned the grievance, Plaintiff attempted to file at Menard.

Plaintiff testified that he placed his grievances in the portable grievance box that was brought around the restrictive housing unit. He testified that the slot on the grievance box, or the box itself, was metal and was deformed. Because of the deformity, the slot to place grievances was large enough that an individual could insert their fingers inside the locked box to remove a document. Plaintiff further testified that he filed many grievances during the relevant time, and that nine times out of ten if he did not get a receipt he would write to his counselor about it, but he would not get a response. However, he also testified that he might have gotten sidetracked from following-up on missing grievances because he had a lot going on during the relevant time period.

CONCLUSIONS OF LAW

### A. Legal Standards

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). "At *Pavey* hearings, judges may hear evidence, find facts, and determine credibility. After finding

facts, the district court may allow a claim to proceed or dismiss it for failure to exhaust." *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018) (internal citations omitted).

For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. As an inmate in the Illinois Department of Corrections (IDOC), Plaintiff must follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). Under IDOC's procedure, an inmate initiates a grievance with his counselor, and he may then submit his grievance to a grievance officer at his facility, and to the CAO at his facility. If an inmate is unsatisfied with the outcome at the facility he must appeal to the ARB within 30 days. 20 ILL. ADMIN. CODE § 504.850(a). However, "if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting," then the grievance procedure becomes unavailable. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (finding that an inmate who placed a timely ARB appeal in his chuckhole for mailing, but whose grievance was apparently lost, did all that he could to follow exhaustion procedures).

Whether a claim has been exhausted pursuant to § 1997e(a) is a determination for a judge—not a jury—to make. *Pavey v. Conley*, 544 F.3d 739, 741-42 (7th Cir. 2008). If a *Pavey* hearing is held due to an issue of fact about exhaustion of administrative remedies, the court hears evidence, finds facts, and determines credibility. *Wilborn v. Ealey*, 881 F.3d

998, 1004 (7th Cir. 2018). The burden of proof is on the defendants to demonstrate that the prisoner failed to exhaust available administrative remedies. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Generally, a defendant will need to do more to carry the burden than plainly allege that no grievance exists, a defendant might meet said burden by submitting additional evidence such as grievance logs, counseling summaries, or evidence about the routine function of the grievance procedure. *See e.g., Daniels v. Prentice*, 741 Fed. App'x 342, 343-44 (7th Cir. 2018) (not published in the Federal Reporter) (finding that a defendant met her burden to show a lack of exhaustion by submitting records of an inmate's grievance activity, the inmate's counseling record, and affidavits on the prison grievance procedure to contradict the plaintiff's own testimony about grievances that allegedly went missing).

### B. Analysis

The Court held a *Pavey* hearing in this matter to find facts and to review the credibility of the witnesses. The Defendants carried their burden of establishing that the grievance procedure was accessible to Plaintiff, and that it functioned in a routine fashion. Ms. Pierce testified credibly that inmates in restrictive housing would place grievances in locked boxes and that every grievance received would be logged, the inmate would receive a receipt, and the grievance would be processed through the appropriate channels. Any inmate who did not receive a receipt within a few days could seek an update from the counselor during gallery tours, or via a kite to the grievance office. All inquiries about grievances for which an inmate had not received a receipt would be answered, such that an inmate could re-file a grievance if needed. Ms. Pierce's credible

testimony about the reliable nature of the grievance process at Menard during the relevant time is bolstered by the grievance records that were admitted at the hearing (Exhibits 1, 2), and that were previously submitted in support of the Defendants' Motion for Summary Judgment (Docs. 62-1, 62-2).

From Ms. Pierce's testimony and the grievance records, it is clear that Plaintiff submitted and properly exhausted many grievances during the relevant time at Menard. For example, he properly submitted and exhausted grievance 230-9-21 about issues with his meal trays involving Defendants Dowdy, Kempfer, Rhoades, and others. (Doc. 62-2 at 96-100). The grievance was fully exhausted both at the prison level and at the ARB. The Court already found that this grievance was sufficient to satisfy exhaustion for some of the claims in this case. (Doc. 68). The existence of this properly exhausted grievance, and many others, bolsters the finding that the grievance process was available to Plaintiff, and that it was available for factual allegations of the exact nature as those in Claims 1D and 2C against Defendants Sowels and McClellan.

Although Plaintiff testified at the hearing that he believed it was possible for some of his grievances to be removed from the locked box if an officer reached through the slot in the box, this testimony is speculative, and the Court does not find that it is specific enough to explain what happened with relation to a potential grievance about McClellan and Sowels. While Plaintiff alleges that he believed the physical condition of the box would allow this behavior, he did not indicate he ever saw this transpire with his own grievances. At most, he testified that he placed his grievances in the locked box. The Court also notes that Plaintiff testified that he often followed-up if he did not get a

grievance receipt, but he admitted that he did not always do this because he had a lot going on and might have lost track of it. Plaintiff did not provide any specific information about how many grievances he might have tried to submit concerning Sowels or McClellan, when he tried and failed to submit them at the prison, or if he followed-up via kite or with a counselor to check on any such grievance. Because the Defendants have credibly established that the grievance procedure was available to Plaintiff and that they have no record of a grievance against Sowels or McClellan, Plaintiff's ambiguous testimony about a lost or missing grievance against Sowels and McClellan is not enough to demonstrate that he exhausted his remedies against these two defendants. As such, the Court finds that Plaintiff failed to exhaust his administrative remedies against Sowels and McClellan connected to Claims 1D and 2C and these claims against these defendants are dismissed without prejudice.

The same analysis also applies for the conditions of confinement claims against Defendant Wills, which are a subpart of Claim 2A, and which make up the entirety of Claim 2I. The Defendants have credibly established that Plaintiff could have accessed the grievance procedure to pursue concerns about his conditions of confinement, but there is no documentary proof that he actually filed grievances at Menard on this issue. Plaintiff argued in his written response to summary judgment that he had attempted to file grievances about this issue, but he never got receipts or answers at Menard, so eventually he sent it directly to the ARB. Despite this written argument, Plaintiff said nothing at all about a conditions of confinement grievance at the Pavey hearing. Absent any testimony or evidence from Plaintiff, the Court now finds that the grievance process

was available to Plaintiff, but that he did not properly exhaust Claims 2A or 2I with respect to conditions of confinement. Accordingly, these claims are dismissed without prejudice as to Defendant Wills.

## DISPOSITION

Defendants have credibly established that Plaintiff failed to exhaust his administrative remedies as to Defendants Sowels and McClellan, so Claims 1D and 2C against Defendants Sowels and McClellan are dismissed without prejudice for failure to exhaust. The same goes for Claim 2A against Defendant Wills concerning the conditions of confinement. While Plaintiff has failed to exhaust as to Claims 1D and 2C against Sowels and McClellan, and in Claim 2A against Wills on the conditions of confinement---these three claims will still proceed as limited by the Court's earlier written order on summary judgment and as listed below. (Doc. 68). By contrast, Plaintiff has failed to exhaust his remedies on the conditions of confinement against Defendant Wills in Claim 2I, and this claim is dismissed in the entirety for failure to exhaust, because it does not name any party other than Wills.

The case may now proceed to merits discovery on the following claims:

Claim 1D:   First Amendment retaliation claim against Defendants Dowdy, Kempfer, Rhoades, and Connor;

Claim 2A:   Eighth Amendment deliberate indifference claim against Defendant Wills solely as to his response to correspondence about inadequate meal trays;

Claim 2C:   Eighth Amendment inadequate meal tray claim against Defendants Dowdy, Kempfer, Rhoades, and Connor;

Claim 3C: First, Eighth and/or Fourteenth Amendment claim against Defendant Wills for allowing other officers to sabotage Plaintiff's breakfast trays after multiple grievances on this issue.

A merits discovery schedule will follow.

The Defendants are **DIRECTED** to file their exhibits from the Pavey hearing on the docket sheet. Exhibits 1-4 were admitted on the record without objection at the hearing and they were displayed via screen sharing, but these exhibits have not been formally tendered to the Court on the docket sheet.

**IT IS SO ORDERED.**

Dated: December 8, 2023

/s *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge